UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

MULTISORB TECHNOLOGIES, INC.,                                  06-CV-0141E(Sc)

        Plaintiff,

  -vs-                                                                                   MEMORANDUM

IMPAK CORPORATION and                                                        and
KEVIN CULLEN,
                                                                                          ORDER[1]
        Defendants.

---

Plaintiff Multisorb Technologies, Inc. commenced this action on March 9, 2006 claiming that defendants Impak Corporation ("Impak") and Kevin Cullen[2] unlawfully registered the domain name "www.multisorbtechnologies.com" (hereafter "the Infringing Website") without plaintiff's knowledge or consent in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a), the Anticybersquatting Act, 15 U.S.C. §1125(d), Sections 133, 349 and 350 of New York General Business Law and the common law doctrine of unfair competition. Plaintiff, on March 21, 2006, moved for a preliminary injunction enjoining defendants from using the Infringing Website. Plaintiff contends that a preliminary injunction is appropriate because (1) it is undisputed that defendants

---

[1] This decision may be cited in whole or in any part.

[2] Defendant Cullen is the sole shareholder, officer, director, agent and employee of defendant Impak.

have wrongfully appropriated plaintiff's trademark and trade name rights in a bad faith effort to profit directly from the Infringing Website, (2) defendants intentionally copied plaintiff's trade name, (3) there is a clear likelihood of confusion and (4) plaintiffs will likely be irreparably harmed if a preliminary injunction is not issued. Defendants have neither responded to the motion for a preliminary injunction nor filed an answer to the complaint. Plaintiff requested the Clerk's Entry of Default on April 10, 2006 and such was granted on April 11, 2006, on which date plaintiff moved for an Entry of Default Judgment. On April 13, 2006, defendants moved to vacate the Clerk's Entry of Default. The motion for preliminary injunction was submitted on the papers on April 14, 2006 without opposition from defendants. For the reasons set forth below, preliminary injunction will be granted and defendants will be enjoined from using the Infringing Website.

    The facts are found as follows and are undisputed as defendants have not filed opposition papers to the motion for a preliminary injunction. Plaintiff manufactures and distributes sorbents as does Impak, whose sorbents are in direct competition with plaintiff's products. Plaintiff owns the trademark and trade name "Multisorb Technologies" and, for the past ten years, has continuously used the trademark and trade name in the course of conducting its business. Such use has included written advertisements and on-line at "www.multisorb.com" (hereafter "Plaintiff's Website"). Plaintiff's Website is

used to promote its products and services and furthers the recognition of its trademark and trade name. Plaintiff claims that its trade name has become widely known and has acquired a favorable reputation with consumers.

Cullen, without plaintiff's knowledge or consent, registered the domain name of the Infringing Website, while fully aware of plaintiff and of plaintiff's trademark and trade name. Upon entering the Infringing Website, users are automatically directed to "www.sorbentsystems.com" (hereafter "Defendants' Website") — which domain name is owned by Impak and which company is affiliated with defendants and is one of plaintiff's competitors. Plaintiff alleges that defendants registered the Infringing Website without plaintiff's permission or authorization and with the intent to confuse consumers and divert plaintiff's customers to Defendants' Website.

"[A] party seeking preliminary injunction must demonstrate (1) that it will be irreparably harmed in the absence of an injunction, and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits of the case to make them a fair ground for litigation, and a balance of hardships tipping decidedly in its favor." *Brewer* v. *W. Irondequoit Cent. Sch. Dist.*, 212 F.3d 738, 743-744 (2d Cir. 2000). The purpose of issuing a preliminary injunction is to "preserve the status quo and prevent irreparable harm until the court has an opportunity to rule on the *** merits." *Devose* v. *Herrington*, 42 F.3d 470, 471 (8th Cir. 1994) (per curiam). "In an action for trademark infringement,

where a mark merits protection, a showing that a significant number of consumers are likely to be confused about the source of the goods identified by the allegedly infringing mark is generally sufficient to demonstrate both irreparable harm and a likelihood of success on the merits." *Virgin Enters. Ltd.* v. *Nawab*, 335 F.3d 141, 146 (2d Cir. 2003) (citing *Bristol-Myers Squibb Co.* v. *McNeill-P.P.C., Inc.*, 973 F.2d 1033, 1038 (2d Cir. 1992)). Thus, the issue before the Court is whether, in the absence of a preliminary injunction, a significant number of consumers would be confused about the sponsorship of the Infringing Website.

Section 43(a)(1)(A) of the Lanham Act, which plaintiff claims that defendants have violated, states, in pertinent part:

> "Any person who, on or in connection with any goods or services $_{***}$, uses in commerce any word, term, name, $_{***}$ or any combination thereof, or any false designation of origin, $_{***}$ which —
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person,
>
> \*       \*       \*       \*       \*
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act."

A nonexclusive list of eight factors is used by courts to determine whether there is a likelihood of confusion, mistake or deception — *viz.*, "(1) the strength of the plaintiff's mark; (2) the degree of similarity between the two marks; (3) the competitive proximity of the products or services; (4) the existence of actual

confusion; (5) the likelihood that the plaintiff will 'bridge the gap' between the two markets; (6) the defendant's good faith in adopting its mark; (7) the quality of the defendant's product; and (8) the sophistication of the purchasers." *Mobil Oil Corp.* v. *Pegasus Petroleum Corp.*, 818 F.2d 254, 256 (2d Cir. 1987) (citing *Polaroid Corp.* v. *Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961)). The sixth and seventh factors are more pertinent to issues other than likelihood of confusion, such as harm to plaintiff's reputation and choice of remedy. *Virgin*, at 147. In balancing these factors and in simply comparing the Infringing Website to Plaintiff's Website, it is clear that there is a high likelihood of confusion.

First, the strength — or inherent distinctiveness — of plaintiff's mark weighs in favor of a finding of likelihood of confusion. Plaintiff's mark is arbitrary, as opposed to being generic, descriptive or suggestive, as to its goods. *See Abercrombie & Fitch Co.* v. *Hunting World, Inc.*, 537 F.2d 4, 9 (2d Cir. 1976). Second, the two marks are almost identical. *See, e.g., Virgin*, at 149 ("Plaintiff's and defendants' marks were not merely similar; they were identical to the extent that both consisted of the same word ∗∗∗. ∗∗∗ In view of the fact that defendants used the same name as plaintiff, we conclude the defendants' mark was sufficiently similar to plaintiff's to increase the likelihood of confusion ∗∗∗ as a matter of law."). Here, Plaintiff's Website uses only the first word in plaintiff's mark while the Infringing Website uses both the first and second word in the

mark. It is hard to imagine similarity much more obvious or more confusing than this.

Next, the closer the goods of both parties and the markets in which they are sold, the greater the likelihood of confusion. *Virgin*, at 150. Plaintiff and defendants are in the same market, making confusion highly likely. The fact that plaintiff and defendants are in the same market makes the fifth factor — *viz.*, the likelihood that plaintiff will "bridge the gap" — irrelevant because there is no gap in their markets to bridge as the markets are identical. *Paddington Corp.* v. *Attiki Imps. & Distribs., Inc.*, 996 F.2d 577, 586 (2d Cir. 1993) ("[T]he * * * products * * * would compete in the same market, a factor that * * * weighs in favor of a finding of likelihood of confusion. Since the [products] would compete in the same market, the * * * likelihood-of-bridging-the-gap factor, which examines whether the prior user may wish to enter the defendant's market in the future, [is] irrelevant.").

Plaintiff has not shown and does not need to show actual confusion because "actual confusion is very difficult to prove and the [Lanham] Act requires only a likelihood of confusion as to the source." *Lois Sportswear, U.S.A., Inc.* v. *Levi Strauss & Co.*, 799 F.2d 867, 875 (2d Cir. 1986). Similarly, the sophistication of the purchasers factor is also irrelevant here because, although the purchasers of plaintiff's products are more sophisticated professional buyers, the extreme similarity between the domain names of the Infringing Website and Plaintiff's Website cannot be overcome by a sophisticated purchaser.

Finally, the sixth and seventh factors, although not as indicative of likelihood of confusion as the other factors, also weigh in favor of issuing a preliminary injunction. Plaintiff contends that defendants acted in bad faith and their products are of lower quality. The mere existence of the Infringing Website almost conclusively proves that defendants acted in bad faith.

In summary, three of the six factors that pertain directly to the likelihood of consumer confusion favor plaintiff and the remaining three factors — actual confusion, bridging the gap and sophistication of the purchaser — are irrelevant. Furthermore, it is clear that defendants acted in bad faith and that the extremely high possibility of confusion has the potential of irreparably injuring plaintiff. Thus, as a matter of law, plaintiff has demonstrated irreparable harm and likelihood of success on the merits and is entitled to preliminary injunction.

Accordingly, it is hereby **ORDERED** that plaintiff's motion for a preliminary injunction is granted, that defendants will be enjoined from using the domain name "www.multisorbtechnologies.com" and that this injunction shall remain in effect until this case is resolved.

DATED:   Buffalo, N.Y.

April 24, 2006

                                    */s/ John T. Elfvin*
                                    JOHN T. ELFVIN
                                    S.U.S.D.J.